WILLIAM ALLEN BUTLER, RESPONDENT, *v.* EUGENE FINCK, APPELLANT.

*Partnership—where the question as to whether or not one existed should be left with the jury—liability of one partner for the tortious acts of his copartner.*

About January 1, 1878, the defendant entered into an agreement with his brother-in-law, William A. Bushnell, to the effect that he should conduct certain stock speculations for Bushnell's benefit, collecting information of such a character as to justify the purchase of stocks, and giving his time and attention to the purchase and sale thereof; for these services he was to receive one-third of the net profits; the margin to carry the account being furnished by Bushnell. The defendant knew that Bushnell was a book-keeper in the employment of the plaintiff, and had no means outside of his salary. On April 23, 1879, the defendant, claiming that his share of the profits amounted to $6,818.48, received from Bushnell an order upon his broker for that sum, which was paid by the drawee.

On June 8, Bushnell absconded, and it was then learned that he had stolen bonds from the plaintiff, and pledged them to secure his account with the broker, by whom some had been sold and others pledged. It appeared that the sum received by the defendant.was in fact one-third of the profits actually made by him while conducting the account, and also that Bushnell had, without his knowledge, speculated on his own account, both before and after the times referred to. It was not shown that the defendant knew that Bushnell had stolen the bonds until after he had absconded.

The defendant having refused to account to the plaintiff for the amounts received by him, this action was brought to recover damages for the conver-

sion of the bonds, and upon the trial thereof the court directed a verdict for the plaintiff, for the entire amount lost by the abstraction of the bonds, on the theory that the defendant and Bushnell were copartners in the transaction, and that the former was therefore liable for the acts of the latter.

*Held*, that this was error, and that the question as to whether or not a partnership existed between Bushnell and the defendant, should have been submitted to the jury.

*Quære*, as to whether, in any event, the defendant was liable for the amount actually received by him from Bushnell.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict directed at the Circuit.

*A. S. Sullivan*, for the appellant.

*T. H. Hubbard*, for the respondent.

BRADY, J. :

The defendant was charged with the conversion of certain railroad bonds that had been stolen from the plaintiff. When the testimony was given on either side, the court, on application, directed a verdict in favor of the plaintiff for $28,894.83, and judgment was thereupon entered.

It appeared in evidence that about January 1, 1878, the defendant made an agreement with his brother-in-law, William A. Bushnell, at the request of the latter, to conduct certain stock speculations, for which he was to receive, as payment for his services, one-third of the profits. The defendant knew that Bushnell was a bookkeeper in the plaintiff's employment, and that he had no independent means, but lived upon a salary which he drew from the employment mentioned. The agreement made between the defendant and Bushnell, in substance, was, that the former should get information, which, by its character, would justify the purchase of stocks, and that he was to give his attention to the purchase and sale thereof, thus agreeing to manage the stock account for his benefit and that of Bushnell, the latter furnishing the margin; this agreement was carried out by both parties until April 23, 1879, when the defendant claimed, as his share of the profits, and received from Bushnell, through his broker, the sum of $6,818.48; the margins furnished by Bushnell under the agreement mentioned

were bonds which he abstracted from the safe or place where they were deposited in the office in which he was employed, but of that the defendant does not seem to have been advised until June 8, and after Bushnell had absconded. On June 28, the defendant was met by the plaintiff, and the latter, referring to the fact that Bushnell had taken his bonds and used them as a margin, asked the defendant to account for the moneys he had received. The defendant refused to do this, but asserted that the money was his share of the profits on the stock transactions; and he kept this money, and declined to talk with the plaintiff about it, but referred the plaintiff to his attorney. It also appears that when the $6,818.48 was paid to the defendant, he did not ask what it came out of, and did not know how much there was in the account he had been managing. It further appears, however, that this sum was one-third of the profits actually made in the transactions which he alone conducted, and was agreed upon between himself and Bushnell after the latter's examination of the accounts. It also appears that Bushnell was also dealing in stocks upon his individual account, without reference to the joint account, the management of which was left to the defendant, and for which he was to receive the compensation mentioned. The defendant swears positively that the sum received by him was one-third of the profits made by his services when he ceased to manage the joint account. And this is not contradicted. Thus it appears that so far as the use of the margin is concerned, it resulted in a profit, and it could not have been necessary, therefore, to have drawn upon the principal employed in the operations which he conducted.

The learned justice in the court below, directed a verdict for the plaintiff, on the assumption that they were copartners in the transaction, and that the defendant was responsible under the case of the *Manhattan Brass Manufacturing Company* v. *Sears* (45 N. Y., 797), not only for the amount that he received, but for the entire amount which was lost by the abstraction of the bonds, the plaintiff having been obliged to defray large sums of money to recover possession of them. The decision just mentioned seems to establish the doctrine that a joint proceeding in which one or more of the parties is to receive a portion of the profits constitutes a partnership, not

only *inter sese* but as to strangers, and establishes the liability of each of the persons united together, for the debts which are incurred in the prosecution of the joint enterprise. But of the cases relied upon to sustain this doctrine it may be said that there has been no question as to the existence of the copartnership, and the result of the unlawful acts has been brought into and used by the firm; and it generally appears that the assets of the firm were not sufficient to reach the claims of its various creditors.

In this case it is not asserted affirmatively, whatever circumstances may exist tending to show it, that the defendant knew of the manner in which Bushnell obtained the margin. He swears positively that he did not know it; and if there were any reason for believing otherwise, a question of fact was presented for the determination of the jury. It may very well be that, considering his relations to Bushnell, who was his brother-in-law, and the nature of his employment, comparatively humble as it was, that he ought to have made inquiry as to the mode in which he obtained the margin, and not to have accepted Bushnell's statement on that subject as entirely satisfactory. But whether he was put upon inquiry was a circumstance bearing upon the issue just suggested, namely, whether he knew or had reason to believe that Bushnell could not have honestly acquired the margin which he was using.

This was a very important element in the case, for the reason that the defendant swore positively that his transactions were all profitable and that the money which he had received was his interest in the profits actually made. As the joint transactions were prosperous, there would seem to have been no claim upon him for anything more than the sum which was paid to him out of the property of the plaintiff, namely $6,818.48, with interest; because the balance claimed by the plaintiff was the result of individual operations by Bushnell for his benefit alone, having no connection with the joint transaction. It is very clear that, assuming the copartnership to have existed in all respects, the defendant was not liable for the individual acts, or debts, or frauds of Bushnell, perpetrated or incurred for his own benefit. The rule in that respect is too well settled to require any citation of authorities. While the interest of a partner in the assets of a firm may be reached by a

process against him to recover debts contracted by him individually, the members of the copartnership are not responsible unless they have in some way ratified his act, or assumed the indebtedness which he has incurred. Assuming, therefore, that the bonds of the plaintiff were stolen; that they were used for the joint benefit of Bushnell and the defendant, and the individual benefit of Bushnell, and that the joint transactions were not only not attended with loss, but in the aggregate were decidedly successful, it is impossible to understand, on any sustainable theory that this case presents, why the defendant should be called upon to pay the loss resulting to the plaintiff from the abstraction of the bonds. If the statement of the defendant was true, and it was right to have that considered by the jury, then his connection with Bushnell, and their joint relations to the bonds, was of no prejudice whatever to the plaintiff, for the reason that his operations on joint account were successful and resulted in a large profit.

It is impossible for us to conjecture what testimony would be given upon a new trial. But we do not entertain any doubt that, under the circumstances disclosed, the defendant would be bound to restore to the plaintiff the money received by him, and which was paid out of the property of the plaintiff. That it was paid out of that property, there does not seem to exist any doubt, inasmuch as it is quite clear that Bushnell, by his individual operations, had exhausted the funds in the hands of the broker by a very great extent.

All the circumstances being considered, and the relations of the parties to each other kept in view, we do not see how it is possible to avoid a new trial in this case.

The judgment must be reversed, and a new trial ordered, with costs to abide the event.

BARRETT, J.:

I concur in the opinion that there should be a new trial in this case. The verdict was directed upon the mistaken assumption that a partnership between Bushnell and the defendant was conclusively established. In my judgment, there was, to say the least, a question of fact upon that head to be submitted to the jury with appropriate instructions. The defendant had no interest whatever in the capital

of the adventure. He contributed nothing thereto but his services, for which, he says, Bushnell stipulated to pay him one-third of whatever profits might be made. If the defendant's testimony be true, there would seem to have been no joint ownership of the shares which were bought and sold. The jury might have concluded, upon the whole case, that there was no partnership, but simply an agency. The case, in the particulars indicated, is distinguishable from *Manhattan Brass & Manufacturing Co.* v. *Sears* (45 N. Y., 797), where there was not only a sharing in the profits *as such*, but a common interest in the stock of the company. It is more analogous to that class of cases where *quasi* partnership interests are given to superior clerks and valuable agents. There the principal (whether a firm or an individual) agrees to pay such clerk or agent for his services a certain proportion of the net profits, or a sum equivalent thereto. It is well settled that such an agreement does not constitute the clerk or agent a partner either *inter sese*, or as to creditors.

By the direction of the verdict, the defendant was held to the strictest partnership liability. That is, he was mulcted solely for Bushnell's tort, without regard to his own innocence or guilt, knowledge or want of knowledge, or the existence of circumstances putting him upon inquiry. It follows, that if the partnership or joint adventure was not conclusively established there should be a new trial. Nor can the direction be upheld upon the agency basis. The defendant exercised no control over the plaintiff's property. Bushnell placed the stolen bonds in the broker's hands, as security against depreciation or appreciation, as the case might be. With this, the defendant had nothing to do. He did not even know of what the security consisted. All he did was to give the brokers orders to buy and to sell. Such orders involved no intermeddling on his part with the collaterals. Whether there was any, and, if so, what margin, was a matter entirely between the broker and Bushnell. The defendant simply operated upon the basis that the broker was willing (in consequence of some arrangement with Bushnell) to execute his, defendant's, orders, on Bushnell's account.

There is one point as to which I prefer to reserve my deliberate

judgment until the question is directly presented. That is, as to the plaintiff's right, *at all events*, to recover what was actually received by the defendant for his one-third of the profits. I cannot think that this question is so entirely free from doubt as it seems to be to my brother BRADY.

There was a sum of money due to the defendant by Bushnell, which the latter paid by an order on his broker. At least that is one view of it. It is, in my judgment, questionable whether the defendant, if innocent, chargeable with no notice, or not otherwise put upon inquiry, is responsible for the means resorted to by the broker to raise the money wherewith to honor the order. That may well be reserved until all the facts are before the court upon a new trial.

DAVIS, P. J., concurred.

Judgment reversed, new trial ordered, costs to abide event.